

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2009

# Wiendarta v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Wiendarta v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1184.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1184

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IMG-089                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2186
_____

WIENDARTA,
                                                Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
Agency No. A78 203 028
Immigration Judge: Lawrence O. Burman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 11, 2009

Before: RENDELL, GREENBERG and VAN ANTWERPEN,  Circuit Judges

(Filed: June 15, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Wiendarta petitions for review of an order of the Board of Immigration Appeals

("BIA"), dismissing his appeal from an Immigration Judge's ("IJ's") final order of

removal. We will deny the petition for review.

Wiendarta is a sixty-four year old native and citizen of Indonesia who entered the United States in 1998 on a tourist visa and who stayed longer than permitted. Wiendarta filed an application for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"), asserting that he fears persecution if removed to Indonesia because he is a Chinese Christian.

Wiendarta testified that a store he owned and operated was looted and burned by Muslim Indonesians during the political unrest of 1965.[1] He was financially unable to reopen his store and instead worked for an oil company and then as a taxi driver. He later opened a second store in a predominantly Muslim area. He testified that the second store was robbed and looted in 1996 by the family of his daughter's Muslim boyfriend, of whom Wiendarta disapproved. Wiendarta could not afford to open another store. Wiendarta also pointed to an incident in 1997 during which stones were thrown at his church. On July 28, 2006, the IJ concluded that his asylum application was time-barred and denied Wiendarta's remaining claims for relief. The IJ concluded that although these events constituted discrimination and harassment, they did not rise to the level of past persecution. As the IJ further explained, although Wiendarta claimed that the destruction of his stores and the continuing threat from Indonesian Muslims who hate Chinese

---

[1] Wiendarta first testified that the looting occurred in October 1995, but when his attorney asked how many years before 2006 the event occurred, he said "41 years ago." Hearing Transcript at 41.

Christians effectively ruined his chances for economic livelihood if he were to return to Indonesia, he has two sons still living in Indonesia who can support him, as well as a son and a daughter in the United States who could also provide financial support for him. The IJ also noted that Wiendarta waited until his youngest child graduated from college before leaving for the United States.

On March 25, 2008, in a short opinion, the BIA affirmed the IJ's decision on the merits. The BIA agreed with the IJ's finding that Wiendarta's asylum claim was untimely and that no exception applied. The BIA held that the incidents Wiendarta described from his past did not rise to the level of persecution, and that he had not shown that it was more likely than not that he would be persecuted in the future. The BIA also held that Wiendarta had not shown that it was more likely than not that he would be tortured in Indonesia. Wiendarta filed a timely petition for review.

In most cases, we have jurisdiction to review a final order of removal involving the denial of asylum. 8 U.S.C. § 1252(a)(1). However, 8 U.S.C. § 1158(a)(3) provides that no court shall have jurisdiction to review any determination regarding the timeliness of an asylum application and the applicability of the exceptions. See Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). Although the subsequently enacted REAL ID Act amended the Immigration and Nationality Act to allow constitutional claims or questions of law to survive its jurisdiction-stripping provisions, see REAL ID Act § 106(a)(1)(A)(iii), 8 U.S.C. § 1252(a)(2)(D), Wiendarta has not raised any legal or

3

constitutional claims regarding the IJ's determination that his asylum claim was untimely. Because we lack jurisdiction to consider whether Wiendarta's asylum application was timely, our review is confined to consideration of whether the BIA properly affirmed the denial of withholding of removal.[2]

To be eligible for withholding of removal, Wiendarta must demonstrate that it is more likely than not that his life would be threatened in Indonesia on account of race, religion, nationality, membership in a particular social group, or political opinion. Tarrawally, 338 F.3d at 186; 8 U.S.C. § 1231(b)(3)(A). We may reverse the BIA's decision only if the record would compel a reasonable factfinder to conclude that the requisite fear existed. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Wiendarta argues that he suffered past persecution on account of his Chinese ethnicity and his Christian religion when (1) he twice suffered the loss of his business when it was looted and damaged in 1965 and again in 1986; (2) he was struck on the face by a wooden stick during the 1986 incident and had to get stitches in his lip; and (3) he saw that the windows of his church had been broken. We conclude that Wiendarta has not shown that the record compels a finding that he suffered past persecution, as opposed to discrimination or harassment, on account of his ethnicity or religion. Fatin v. I.N.S., 12

---

[2] Wiendarta's brief contains a conclusory statement in a caption that this Court has jurisdiction to review the denial of his CAT claim, but contains no argument concerning relief under the CAT. Such a statement is not sufficient to bring the issue before the Court, and we deem the issue waived. De Araujo v. Gonzales, 457 F.3d 146, 153 (1st Cir. 2006); Voci v. Gonzales, 409 F.3d 607, 610 n.1 (3d Cir. 2005).

F.3d 1233, 1240 (3d Cir. 1993) ("persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional").

Wiendarta also argues that there is a pattern or practice of persecution against Chinese Christians in Indonesia. We have held that in order to constitute a "pattern or practice," the persecution of a group must be "systemic, pervasive, or organized." Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). In Wong v. Attorney General, 539 F.3d 225 (3d Cir. 2008), we held that the United States Department of State's 2003 and 2004 Country Reports regarding Indonesia did not demonstrate a pattern or practice of persecution against Chinese Christians. Id. at 233. We noted that the 2005 and 2006 Country Reports documented improved treatment of Chinese Christians in Indonesia. Id., 539 F.3d at 234.[3] The record here contains the 2005 Country Report, which notes a reduction in inter-religious violence and a government initiative to prosecute extremists. Wiendarta states in his brief that "there is abundant evidence in the record that the Indonesian government has condoned religious violence against the Chinese Christians . . . [and] has selectively prosecuted perpetrators of /Chinese Christian-Muslim conflict that has resulted in a disproportionate number of Chinese Christian victims" but he does not

_____

[3] Wiendarta argues that we should be persuaded by the decision in Eduard v. Ashcroft, 379 F.3d 182 (5th Cir. 2004), where the Court found a pattern or practice of persecution of Chinese Christians in Indonesia. However, in Wong we examined the decision in Eduard and we found that it was based on country conditions in 2000, and that it was not persuasive regarding conditions in Indonesia as reflected in later (2004) reports. Wong, 539 F.3d at 234-35.

point to any particular part of the record in support of this claim. We note that much of the evidence Wiendarta submitted in support of his asylum application dated from 1998 through 2000, and Wiendarta has not explained how any of the later materials, which mainly concern three Christian women accused of "Christianizing" Muslim children, have any relevance to the likelihood that he will be persecuted on account of his religious practice.[4]

We conclude that Wiendarta has not shown that the record compels a finding that his life would be threatened if removed to Indonesia so as to entitle him to withholding of removal. Tarrawally, 338 F.3d at 186. We will deny the petition for review.

---

[4] Wiendarta also argues, citing Sael v. Ashcroft, 386 F.3d 922 (9th Cir. 2004), that because he is a member of a disfavored group, he need show only a "comparatively low" level of individualized risk. As the Government notes, we have rejected the "disfavored group analysis in Sael." Wong v. Attorney General, 539 F.3d 225, 235, n. 5 (3d Cir. 2008).

6